(No. 16825.—Reversed and remanded.)
CHARLES DAVIS SARTAIN *vs.* J. W. DAVIS *et al.* Appellants.—(ROBERT MYERS, Appellee.)

*Opinion filed October 28, 1926—Rehearing denied Dec. 8, 1926.*

1. PARTITION—*when defendant may be substituted as complainant after transfer of complainant's interest.* A partition suit, or any suit in equity, is not necessarily abated by showing that a sole original complainant's interest in the subject matter has ceased to exist, and where the interest of the complainant in a partition suit is transferred to one of the defendants, another defendant who has purchased the interest of another party may, on motion, be substituted as complainant by filing an original bill in the nature of a supplemental bill, and he will be entitled to the benefit of the proceedings taken prior to his entry into the suit.

2. SAME—*filing premature bill cannot defeat power of executor.* An executor has a reasonable time after a will has been admitted to record within which to exercise the power conferred upon him by the will to make partition or to sell real estate, and that power is not divested by the filing of a bill for partition before he has had a reasonable opportunity to act.

3. SAME—*what is sufficient evidence of advancement.* Where a will provides that any advancements made by the testator shall be deducted from the shares given his children and grandchildren under the will and expressly authorizes the taking of a receipt from the parent of any grandchildren for an advancement made to them, parol evidence is admissible to show what advancements were made in accordance with the provisions of the will; and an advancement so made to grandchildren is sufficiently established where there is no contention that the grandchildren did not receive the benefit of it.

4. SAME—*when circuit court may order sale by executor under prayer of cross-bill for general relief.* Although a cross-bill filed by an executor, as defendant in a partition suit, specifically requests the court to order him to sell the land under the direction of the county court under provisions of the will for an equal division of the testator's estate, both real and personal, the circuit court, under a further prayer of the cross-bill for general relief, has full power to direct the executor to sell the property sought to be partitioned, where it is necessary to effect an equal division of the estate and is within the power of the executor under the terms of the will.

5. Same—*exception need not be taken to dismissal of cross-bill.* An exception need not be taken to the dismissal of a cross-bill in a suit for partition, as the entire proceedings in a chancery suit are matter of record and are subject to review on appeal or error without the taking of formal exceptions to the various decisions of the court in the progress of the cause.

6. Wills—*when executor has implied power to sell real estate.* The power to sell real estate will be implied where it is necessary to enable the executor to carry out the provisions of the will; and such is the case where it is evident from the will itself that the testator intended to blend the real and personal property so as to create a fund to be distributed as money.

7. Same—*when power of sale will not be implied.* Under a will directing the executor to divide property consisting wholly or partly of real estate, if a division can be effected by an actual partition of the land and thereby carry out the intention of the testator a power of sale will not be implied.

8. Same—*what may be considered in ascertaining testator's intention.* The paramount rule in the construction of wills is to ascertain the intention of the testator and to give effect to that intention if it can be done consistently with the rules of law, and to that end the whole scope of the will must be considered and every provision given due weight in the light of the facts and circumstances surrounding the testator, his family and property at the time the will was made.

9. Same—*when will gives executor power of sale.* A will directing an executor to divide the testator's estate equally among his thirteen children and the children of any deceased child must be held to give the executor implied power of sale where the testator's real estate does not consist of sufficient land to effect an actual partition into as many equal shares as the will provides, as in such case the executor can perform the duty with which he is charged, to divide all the testator's property, "of every kind and nature whatsoever," and distribute the same as provided in the will, only by making a sale of the real estate.

10. Same—*county court has no power to appoint co-executor not named in will.* A testator has the absolute right to select an executor to carry out the provisions of his will, subject only to such limitations as are expressly declared by law, and where a competent executor is named in the will and accepts the trust the county court has no authority to appoint a co-executor although at the request of the executor named in the will, as the court's power in this respect is limited to the recognition and approval or disapproval of a nomination made by the testator.

APPEAL, from the Circuit Court of Saline county; the Hon. A. W. SUMMERS, Judge, presiding.

JOHN H. MEYER, for appellants.

W. W. WHEATLEY, for appellee.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Thomas J. Davis, a resident of Saline county, died testate July 3, 1923. He left as his only heirs-at-law his twelve children, Nancy V. Clark, Sarah E. Hughes, Tennessee C. Karnes, W. W. Davis, Thomas O. Davis, Harley Davis, Charles A. Davis, James M. Davis, Roscoe C. Davis, J. W. Davis, B. F. Davis and Pearl I. Berry, and seven grandchildren, Alta M. Bovinet, Richard Davis, Bonnie Davis, Bernice Davis, Aileen Davis, Nolen Davis and Marjorie Davis, the surviving children of Samuel O. Davis, a deceased son of the testator, and two great-grandchildren, Clyde Davis and Helen Davis, the children of Clyde Davis, a deceased son of Samuel O. Davis, deceased. The testator at the time of his death owned different parcels of land aggregating 164½ acres, and some personal property. His will provides in part:

"*Second*—After the payment of such funeral expenses and debts I give, devise and bequeath to my sons and daughters [naming the twelve above mentioned] each the one-thirteenth part of my estate which shall remain at the time of my decease, and I hereby give, devise and bequeath to the children of my deceased son, Samuel O. Davis, the one-thirteenth part of my estate; that is to say, it is my will that at the time of my decease such property as I may have remaining, of every kind and nature whatsoever, be, by my executor, hereinafter named, divided into thirteen equal portions and that one of said portions be, and the same is

hereby devised and bequeathed to each of my said children who shall be living at the time of my decease, and that one of said portions is hereby devised and bequeathed to the children of such deceased son or daughter as the case may be, it being expressly herein provided that the one-thirteenth part of my estate shall be divided equally between the children of my deceased son, Samuel O. Davis.

"*Third*—In case I should deem it necessary to make any advancements of any money or property to any of my children or grandchildren, prior to my decease, such money or property so advanced shall be deducted from that portion of my estate herein devised and bequeathed to such child, children or grandchildren. Upon such advancements being made and upon the taking of the receipt, signed by the parties themselves to whom the advancement is so made or by the parent or parents of any grandchild mentioned therein, then the amount mentioned in said receipt or receipts shall be deducted from the amount herein bequeathed to such son or daughter or grandchild or grandchildren."

J. W. Davis was named in the will as executor, but upon his application to the county court his brother B. F. Davis was appointed co-executor with him, and letters testamentary were issued to them on August 6, 1923. Subsequently to the execution of his will Thomas J. Davis, the testator, advanced $600 to the children of Samuel O. Davis, deceased, on account of their shares, and the receipt of the widow was taken therefor. Within two months after the testator's death his daughter Sarah E. Hughes died, leaving her husband, Richard T. Hughes, and four children, Lenora C. Morten, Monta A. Mills, Charles Davis Sartain and Mary Ellen Hughes, surviving.

On January 19, 1924, Charles Davis Sartain filed a bill for partition of the lands left by the testator. Answers were filed on behalf of the minor defendants by their guardians *ad litem*. J. W. Davis and B. F. Davis, as executors, filed a joint and several answer, and the bill was

taken as confessed by all the other adult defendants, including J. W. and B. F. Davis individually. The executors also filed a cross-bill, and later an amended cross-bill, in which they alleged that a trust was created in the person named in the will as executor to divide the lands among the persons designated in the will, and if such division could not be made without prejudice to them, then to sell the lands and divide the proceeds of sale in the manner specified. The executors further alleged in their amended cross-bill that the lands could not be divided, and in order to carry out the trust which they asserted had been created by the will, they asked to be directed, as trustees, to sell the lands at public or private sale and to divide the proceeds among the beneficiaries under the will. A demurrer to the amended cross-bill, averring that the latter on its face showed no power, express or implied, in either or both of the executors to sell the lands devised by the will, was sustained. The executors elected to stand by their amended cross-bill, and the court dismissed both the cross-bill and the amended cross-bill for want of equity. The executors then asked and obtained leave to file an amended answer to the original bill. In this answer they averred the purchase by B. F. Davis on February 10, 1924, of the interest of Sartain, the original complainant, in the lands sought to be partitioned. Sartain filed exceptions to the amended answer, alleging that the executors had knowledge of the conveyance of his interest to B. F. Davis at the time they filed their answer and that the defense interposed by the amended answer was inconsistent with the facts averred in their original answer. The court overruled the exceptions and the complainant was directed to plead by a certain day. The time was enlarged for that purpose, but he elected to stand by his exceptions to the amended answer. Within the time allowed so to plead, Robert Myers, one of the defendants to the original bill, made a motion for leave to become a party complainant and to file an original bill in

323—18

the nature of a supplemental bill. The motion was supported by a petition which set forth that he had lately acquired the interest of Monta A. Mills, another original defendant, in the lands sought to be partitioned. Leave was granted, the original bill in the nature of a supplemental bill was filed, Myers was allowed the benefit of the proceedings taken in the cause, and to the extent that Sartain was a party complainant the bill filed by him was dismissed for want of equity at his costs. J. W. and B. F. Davis, individually and as executors, demurred to the original bill in the nature of a supplemental bill, but the demurrer was overruled. They filed an answer and it was followed by their cross-bill. The original bill in the nature of a supplemental bill was amended. The allegations of the cross-bill amplified those of the earlier one, and the prayer sought (1) the court's aid and advice concerning the manner in which the trust alleged to have been created by the will should be executed and whether the advancement made to the children of Samuel O. Davis, deceased, should be considered a part of the testator's estate; (2) an order for the sale of the lands under the direction of the county court and a division of the proceeds of sale among the beneficiaries under the will, their legal representatives or assigns, in the same proportions as the testator's personal property was by the provisions of the will to be distributed; and (3) general relief. Robert Myers answered the cross-bill, denying that the will created a trust in J. W. Davis as executor, or in B. F. Davis, also appointed executor by the county court, or in both of them jointly, to divide the lands or to sell them and make division of the proceeds of sale. Answers in behalf of the minor defendants to the supplemental and cross-bills were filed by their guardians *ad litem.* Both bills were taken as confessed by the adult defendants and cross-defendants who failed to answer. A hearing followed, which resulted in a decree for partition in accordance with the prayer of the original bill in the nature

of a supplemental bill as amended and the cross-bill was dismissed for want of equity. From that decree J. W. Davis and B. F. Davis, individually and as executors, prosecute this appeal.

Appellants first contend that the circuit court had no power to proceed after it appeared that the complainant, Sartain, had divested himself of his interest in the lands sought to be partitioned. A suit in equity is not necessarily abated by showing that the original complainant's interest in its subject matter has ceased to exist. Such a condition results in a suspension and not a determination of the suit. (Story's Eq. Pl.—10th ed.—sec. 354; *Hoxie* v. *Carr,* 1 Sumn. 173; *Clarke* v. *Mathewson,* 37 U. S. 164; 1 Corpus Juris, p. 27.) In case of a transfer of an interest *pendente lite* the proper parties may be brought before the court. (*Hoxie* v. *Carr, supra.*) Where the new bill is not a mere continuation of the former suit but embraces new matters and brings in a new title it is to that extent an original proceeding. The person to whom an interest is so transferred should supply the defect of parties by filing an original bill in the nature of a supplemental bill. (Story's Eq. Pl.—10th ed.—secs. 330, 348, 349; Cooper's Pl. *p. 77; Mitford & Tyler's Pl. & Pr. in Eq.—1876 ed.—p. 164.) The conveyance of Sartain's interest to B. F. Davis left the proceeding without a complainant but the suit was not dismissed. Robert Myers acquired the interest of Monta A. Mills, who was a defendant to the original bill. The suit had not abated at the time and there was no legal obstacle to the substitution of Myers as the complainant. (*Emmerson* v. *Merritt,* 249 Ill. 538.) Moreover, appellants, by filing their cross-bill seeking affirmative relief against the substituted complainant, waived the question of his right to proceed in the suit. (*Matthias* v. *Cook,* 31 Ill. 83; *Thompson* v. *Greer,* 62 Kan. 522.) Myers was properly allowed to file an original bill in the nature of a supplemental bill

and he was entitled to the benefit of the proceedings taken prior to his entry into the suit. (Cooper's Pl. *p. 77.)

The principal question to be determined in this case is whether the executor named by the testator and appointed by the county court has the power to sell real estate. No such power was expressly conferred upon him by the will, and if the power exists it arises only by implication. The power to sell real estate will be implied where it is necessary to enable the executor to carry out the provisions of the will. If the testator intended to blend the real and personal property so as to create a fund to be distributed as money the power of sale exists. In such a case the power is given by implication, in order that the intention of the testator may not be defeated. (*Poulter* v. *Poulter,* 193 Ill. 641.) Where, however, the will directs the executor to divide property consisting wholly or partly of real estate, and a division can be effected by an actual partition of the land and the intention of the testator can be carried out in that way, a power of sale will not be implied. (*Poulter* v. *Poulter, supra; Gammon* v. *Gammon,* 153 Ill. 41; *Hale* v. *Hale,* 125 id. 399.) The paramount rule in the construction of wills is to ascertain the intention of the testator and to give effect to that intention if it can be done consistently with the rules of law. To that end the whole scope of the will must be considered and every provision given due weight to ascertain the plan of the testator in the light of the facts and circumstances surrounding him, his family and property at the time the will was made. *Martin* v. *Martin,* 273 Ill. 595; *Abrahams* v. *Sanders,* 274 id. 452; *Himmel* v. *Himmel,* 294 id. 557; *Boyle* v. *Moore,* 299 id. 571; *Buckner* v. *Carr,* 302 id. 378; *Brill* v. *Green,* 316 id. 583; *Wells* v. *Dalies,* 318 id. 301.

The devise and bequest by the second section of the will of an one-thirteenth part of the testator's estate to each of his children and of a like portion to the children

of his deceased son, Samuel O. Davis, is qualified by the provision: "that is to say, it is my will that at the time of my decease such property as I may have remaining, of every kind and nature whatsoever, be, by my executor, hereinafter named, divided into thirteen equal portions and that one of said portions be, and the same is hereby devised and bequeathed to each of my said children who shall be living at the time of my decease, and that one of said portions is hereby devised and bequeathed to the children of such deceased son or daughter as the case may be." By this provision the executor was directed to divide all the property left by the testator into thirteen equal portions. The duty to divide was imposed upon the executor with respect to the testator's property "of every kind and nature whatsoever," and necessarily included real estate.

Can the executor perform the duty enjoined upon him by the express provision of the will without the power to sell real estate? He is required to divide the property left by the testator into thirteen equal portions. The testator's personal property was appraised at $3663.74. His real estate, constituted of different parcels and aggregating 164½ acres, was valued at less than $13,000. The house and barn, practically new, are located on 2½ acres and cost approximately $5000. Including the advancement of $600 to the children of testator's deceased son, Samuel O. Davis, the value of the estate is less than $17,500 and the share of each child does not equal $1350. Even if the land not improved by buildings can be divided into thirteen equal portions, the house and barn and the ground upon which they stand cannot be equalized with twelve other parcels. Apart from the advancement there is not sufficient personal property to adjust the several shares, and, when that item is considered, the impossibility of effecting a division of the estate by actual partition of the land is emphasized. Moreover, it is conceded that the land must be sold in order to effect a division of the estate as the will requires. In

such a situation the executor can perform the duty with which he is charged and carry out the provisions of the will only by making sale of the real estate. That power is necessary to effectuate the testator's intention, and it will therefore be implied. *Hamilton* v. *Hamilton,* 98 Ill. 254; *Stoff* v. *McGinn,* 178 id. 46; *Poulter* v. *Poulter, supra.*

Sartain, the original complainant, filed his suit for partition within six months from the issuance of letters testamentary. The time for filing claims against the estate had not elapsed and the testator's indebtedness, if any existed, had not been determined. The estate was in process of administration. The executor had not been guilty of any unreasonable delay in the performance of his duties when the suit was instituted. An executor has a reasonable time after a will has been admitted to record within which to exercise the power conferred upon him by the will to make partition or to sell real estate, and that power is not divested by the filing of a bill for partition before he has had a reasonable opportunity to act. (*Fischer* v. *Butz,* 224 Ill. 379; *Buckner* v. *Carr, supra; Goodrich* v. *Goodrich,* 219 Ill. 426.) The instant suit was premature. *Metsker* v. *Metsker,* 320 Ill. 547.

It is argued that the receipt given for the money advanced by the testator to the children of Samuel O. Davis, deceased, was not in compliance with the statute concerning advancements. The widow, who signed the receipt, was their surviving parent. The will expressly authorized the taking of a receipt from the parent of any of the testator's grandchildren for an advancement made to them. There was no serious contention that the grandchildren had not received the benefit of the advancement. The evidence shows that it was made and that it was within the provisions of the will. Parol evidence was admissible to establish the fact. *Alward* v. *Woodard,* 315 Ill. 150.

Appellee insists that appellants' cross-bill by its prayer fails to ask that the executors, or either of them, be ap-

pointed trustees to make sale of the land in question. While
the prayer of the cross-bill specifically requests the court
to order the executors to sell the land under the direction
of the county court, it is not of the essence of the plead-
ings that the property be sold under the supervision of
that court but rather that a sale be made to effect an equal
division of the testator's estate. In addition to the specific
prayer there is also a prayer for general relief. It is there-
fore within the power of the court to grant such relief as
under the pleadings and evidence the nature of the case
may require. (*Churchill* v. *Marr,* 300 Ill. 302; *Kelly* v.
*Kelly,* 293 id. 169; *VanZanten* v. *VanZanten,* 269 id. 491.)
The circuit court has full power to direct the executor to
sell the property. *Frackelton* v. *Masters,* 249 Ill. 30.

Appellee contends that appellants took no exception to
the dismissal of their cross-bill and that they could not for
that reason assign error upon the decree. The original bill
in the nature of a supplemental bill as amended, and the
cross-bill, were heard together. The finding that the cross-
bill was without equity and the order that it should be dis-
missed were included in the decree which awarded parti-
tion. To this decree the cross-complainants excepted. It
was not necessary, however, to take the exception. The
rules of chancery practice do not require that exceptions
shall be taken to the various decisions of the court made in
the progress of the cause. The entire proceedings are mat-
ter of record and are subject to review on appeal or error
without the taking of formal technical exceptions. *Smith*
v. *Newland,* 40 Ill. 100; *Chicago Artesian Well Co.* v. *Con-
necticut Mutual Life Ins. Co.* 57 id. 424; *Miller* v. *Whelan,*
158 id. 544; *Dunne* v. *County of Rock Island,* 273 id. 53.

The testator named J. W. Davis, one of the appellants,
as the sole executor of his will. The county court not only
appointed the executor so named, but also B. F. Davis, his
brother, as co-executor. The authority for the appointment
of the co-executor does not appear. A testator has the ab-

solute right to select the executor to carry out the provisions of his will, subject only to such limitations as are expressly declared by law. He may make a will for the express purpose of naming a particular person to execute it. The selection is usually made because the testator has confidence in the person selected. The confidence so reposed does not extend to any other person, however worthy or qualified, not named by the testator. The office of executor has its origin in a testamentary nomination. The first section of the act in regard to the administration of estates provides: "That when a will has been duly proved and allowed, the county court shall issue letters testamentary thereon to the executor named in such will, if he is legally competent and accepts the trust, and gives bonds to discharge the same." (Cahill's Stat. 1925, p. 51.) The statute does not provide for the issuance of letters testamentary to a person not named as executor in the will. The county court can make no original appointment of an executor, since its power is limited to the recognition and approval or disapproval of a nomination made by the testator. The appointment of B. F. Davis as executor was therefore without authority, and the express power to make a division of the estate, and the implied power to sell land for that purpose, were vested solely in J. W. Davis, the executor named by the testator and appointed by the county court.

The decree of the circuit court is reversed and the cause is remanded to that court, with directions to dismiss the original bill in the nature of a supplemental bill as amended and to enter a decree upon the cross-bill in conformity with this opinion.

*Reversed and remanded, with directions.*