*In re* ESTATE OF JOSIE A. TOMLINSON, Deceased.—(KATHERINE D. SHELTON, Petitioner-Appellant, *v.* FIRST NATIONAL BANK OF PEORIA, Ex'r of the Estate of Josie A. Tomlinson, Deceased, *et al.*, Respondents.—(AMERICAN CANCER SOCIETY, Respondent-Appellee.))

(No. 74-371;

Third District—July 25, 1975.

McConnell, Kennedy, Quinn & Morris, of Peoria (Richard N. Gentry, Jr., of counsel), for appellant.

D'Ancona, Pflaum, Wyatt & Riskind, of Chicago (Robert W. Gettleman, of counsel), for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

Petitioner, Katherine Shelton (formerly Katherine South), appeals from a decree construing a gift to the "Cancer Research Fund" in the residuary clause of the will of Josie Tomlinson, a/k/a Josie Awick, as intending a bequest to the Illinois Division Inc., of the American Cancer Society (hereinafter called "Cancer Society"). It having been stipulated by the parties that there is not now and never was an organization known or chartered as the "Cancer Research Fund," petitioner contends the bequest fails because the language and evidence does not identify the intended beneficiary and that the property, therefore, passes as intestate estate to decedent's heirs at law, including her as an adopted daughter.

Testatrix died February 28, 1973, a resident of Peoria County, where her will, dated May 31, 1951, was admitted to probate; First National Bank of Peoria is executor. The will in relevant parts recites:

"I, Josie Awick, also known as Josie Tomlinson   \*   \*   \*   do

\* \* \* publish \* \* \* the following \* \* \* [as my] \* \* \* Last Will \* \* \*.

1. I declare that I am a spinster; that my parents are both dead and that my only living relatives are my brother, William Awick \* \* \* and my sister, Clara Goldhammer \* \* \*; that I have never been married and I have never legally adopted any child or children.

2. I direct that all my just debts \* \* \* be paid \* \* \*.

3. I \* \* \* bequeath unto Catherine South \* \* \* the sum of Fifty Dollars ($50.00).

4. I \* \* \* bequeath unto Joseph C Risius; my sister, Clara Goldhammer \* \* \*; and my brother, William Awick, each the sum of $50.00.

5. I \* \* \* bequeath unto Connie Kay Risius, the sum of Four Hundred Forty-Six dollars ($446.00) which represented \* \* \* my share of the settlement of the claim for wrongful death of Albert Tomlinson \* \* \* [to be paid in installments] \* \* \*.

6. I \* \* \* give \* \* \* Five Hundred Dollars ($500.00) each to \* \* \* [three churches] \* \* \*.

7. All the rest, residue and remainder of my property \* \* \* I give \* \* \* to The First National Bank of Peoria \* \* \* as Trustee \* \* \* upon the terms and conditions \* \* \* set forth:

(a) My said Trustee shall convert all of the remainder \* \* \* into cash [with discretion and powers to sell] \* \* \*.

(b) My said Trustee shall then erect a suitable \* \* \* monument upon my grave \* \* \* [and provide for perpetual care] \* \* \*.

(c) *I order and direct that my said Trustee shall then distribute all of the remainder of my said estate to the Cancer Research Fund absolutely and forever.*

8. Should any gift \* \* \* lapse or fail for any reason \* \* \* then I order \* \* \* that such \* \* \* bequest so lapsing or failing shall \* \* \* form a part of my residuary estate \* \* \*.

9. All of my heirs at law *which I have omitted in my Last Will* \* \* \* I have done so intentionally and I, therefore, hereby generally and specifically disinherit each, any and all persons whomsoever claiming to be or may be determined to be my heirs at law. [There follows the signature clause and attestation]." (Emphasis added.)

The cause was submitted to the circuit court upon a stipulation of facts and two pieces of documentary evidence. Notwithstanding contrary

recitations of the will, the stipulation admits that petitioner, who was also formerly known as Catherine South, by decree entered October 4, 1928, was and is the adopted daughter of decedent and Albert Tomlinson who preceded testatrix in death. Testamentary capacity, however, is not in issue. One of the items of documentary evidence, offered by the respondent, consists of an affidavit listing 17 instances in which the American Cancer Society received bequests under wills in various parts of the United States under some different designation than its correct name. Three of these 17 are represented in the affidavit as cases involving bequests by Illinois testators, of which two were received by decree. The designations in the three Illinois' instances are said to have been "American Cancer Fund," "National Cancer Society of the United States" and "National Cancer Research Fund." The other item of documentary evidence was offered by petitioner (petitioner's exhibit) and consists of pages 759 and 760 from a volume entitled "Encyclopedia of Associations, Ed. 8, Vol. 1, National Organizations of the U.S." listing various organizations engaged in treatment, research and dissemination of information regarding cancer, including "The American Association for Cancer Research," "Damon Runyon Memorial Fund for Cancer Research," and the "Institute for Cancer Research," all of which are shown to have been founded and in existence before and continuously since the date of testatrix's will.

■■ Where, as here, the language of a will appears clear and unambiguous on its face, but is made uncertain by proof aliunde in attempting to identify a donee, by showing that the language used can apply to more than one with equal certainty, then extrinsic evidence of the facts and circumstances before and at the time of the execution of the will is admissible to assist in ascertaining who or which was intended by the testator. (*Hays v. Illinois Industrial Home for the Blind,* 12 Ill.2d 625, 147 N.E.2d 287 (1958); *Appleton v. Rea,* 389 Ill. 222, 58 N.E.2d 854 (1945); 15 Am. Jur. 2d *Charities* § 108 (1964); see Annot., 94 A.L.R. 26, 79 (1935).) Gifts to charities are viewed with favor by the law; a mere misnomer will not defeat such a bequest if by extrinsic evidence it can be shown with reasonable certainty which organization was in fact intended. Thus, if by striking out false words in a description, a sufficient designation remains, *which in the light of other extrinsic proof* will identify the object of testator's bounty, then the will may be read with the false words eliminated (*Hays v. Illinois Industrial Home for the Blind; Mason v. Willis,* 326 Ill.App. 481, 62 N.E.2d 135 (2nd Dist. 1945)). But if, even with the aid of extrinsic evidence, the intended beneficiary remains uncertain, the bequest is void (95 C.J.S. *Wills,* § 644 (1957); 36 Ill. L. & Pr. *Wills* § 241 (1958)), for the power to make wills

is vested in testators and not courts, and courts will not guess as to what disposition was intended. (*Chicago Daily News Fresh Air Fund v. Kerner*, 305 Ill.App. 237, 27 N.E.2d 310 (1st Dist. 1940).) This is true even where it is certain from the language of the will that testator did not intend for any of her property to pass intestate. (See *Chicago Daily News Fresh Air Fund v. Kerner*.) Moreover, a general charitable purpose will not be deduced from the mere fact that the words used to designate the name of a beneficiary suggests one engaged in a particular charitable work. (*Chicago Daily News Air Fund v. Kerner*.) If the will does not by other language, in addition to the words used to describe the donee, demonstrate a charitable purpose and the gift to that specified donee fails, the bequest cannot be awarded to any other similar charity under the doctrine of cy pres, but will pass to testator's heirs as if the bequest had not been made. (*Chicago Daily News Air Fund v. Kerner*.) Moreover, no claim is made to the bequest here under the doctrine of cy pres.

In *Mason v. Willis*, the validity of a residuary bequest to the "Salvation Army of America" was questioned upon proof aliunde that no such organization was chartered by that specific designation. Extrinsic proof was received that decedent during her lifetime attended Sunday meetings of the Salvation Army at Galva, Illinois, made many contributions to that organization during her lifetime, participated in its work of distributing Christmas baskets to the poor, in its hospital work, and in its work of aiding "fallen girls." It was also shown that she had spoken often of her intention to leave the organization a substantial bequest, and that the correct name of the society was Salvation Army. With such extrinsic proof, the false words "of America" were stricken, and the bequest was upheld as a gift to the Salvation Army.

In the case at bar, the record is devoid of any proof of facts at the time testatrix executed her will which in any manner links her to the American Cancer Society or any other particular organization engaged in similar work. There is no evidence of any names by which she was accustomed to refer to the American Cancer Society or any other similar organization, or that she referred to any of them at any time as the Cancer Research Fund. Indeed, the stipulation excludes any inference that the American Cancer Society was ever known to testatrix as the "Cancer Research Fund" because it recites that *no organization* was ever chartered *or known* by that name. There is no evidence that testatrix during her lifetime ever made contributions to the American Cancer Society or to any other particular organization engaged in similar research work, or that she participated or expressed an interest in the work work of any. Nothing in the record indicates that testatrix had knowledge at the time of executing her will or at any other time of the various

names under which respondent, American Cancer Society, had received bequests from others. As to the instances in respondent's exhibit where the bequests were said to have been awarded by decree, there is no indication here whatever as to what extrinsic evidence the courts heard in these cases which compelled the conclusions that the testators there had reference to the American Cancer Society. Respondent's exhibit is unhelpful as evidence of decedent's intention here or as legal precedent. If as respondent asserts, preeminence in the field of cancer research may fairly be attributed to the American Cancer Society today, by way of judicial notice, that fact does not speak to the circumstances and knowledge of testatrix existing at the time her will was executed in 1951. The record here is devoid of any proof which segregates American Cancer Society from the many other agencies engaged in similar work as the intended donee. Each of the organizations described in petitioner's exhibit contain the words "Cancer Research" in its name while the only word in respondent's name which is common to decedent's designation is the word "Cancer." There is no basis in the evidence by which testatrix's intention can be discovered by striking "false words" in the language of her will.

■■■ The Cancer Society argues that in view of her intention expressed at paragraph 9 of the will to exclude heirs at law as beneficiaries, every reasonable presumption in its favor should be indulged to preclude frustration of that intention. The argument does not clarify that American Cancer Society is the intended donee under the residuary clause; as we have noted, the power to make wills is vested in testators, not courts. (*Chicago Daily News Fresh Air Fund.*) To avoid an intestacy and a distribution to heirs at law, a testatrix must make a gift of her estate to others in language which is clear enough to be given effect by the courts. Courts will not guess as to what disposition might have been intended by language that is inadequate, even where it is certain that a testatrix did not intend for any property to pass intestate. (See *Chicago Daily News Fresh Air Fund.*) The property should be distributed according to provisions of the statute providing for intestate distribution.

The decree of the circuit court is unsupported by the evidence and the law and is accordingly reversed; the cause is remanded for further proceedings.

Reversed and remanded.

STOUDER and STENGEL, JJ., concur.