574

*In re* ESTATE OF GILBERT ROSS, Deceased (James L. Ross *et al.*, Petitioners-Appellants, v. Arthur Kane, Ex'r, *et al.*, Respondents-Appellees).

Third District   No. 3—92—0141

Opinion filed November 13, 1992.

Massie & Steele, of Galva (Michael E. Massie, of counsel), for appellants.

Stansell, Critser, Whitman & Hultgren, of Monmouth (Richard L. Whitman, Sr., of counsel), for appellees.

JUSTICE GORMAN delivered the opinion of the court:

In this will construction case, plaintiffs, nieces and nephews of testator Gilbert Ross, sought a finding that their uncle's will was ambiguous and that his intent, as shown by extrinsic evidence, was for his property to pass to his siblings or their descendants. The trial court entered summary judgment for defendants, testator's surviving siblings, who claimed that the will and the applicable law provide that the entire residuary estate passes only to them in equal parts. We affirm.

On March 5, 1981, Gilbert Ross executed a will, which was drafted with the assistance of an attorney. The will was divided into four articles. In article II, testator bequeathed varying sums of money to each one of his eight siblings. Testator provided that "in the event my sister Cleo Thomas or my brother Robert Vernon Ross are deceased, I direct that the share of said Cleo Thomas shall be distributed to [her named children] *** [and] [i]n the event my brother Robert Vernon Ross is deceased, I direct that the share of said Robert Vernon Ross shall be distributed to [his named children]." Testator's brother Robert had been dead since 1965 and his sister Cleo had been dead since January 1981. Testator had attended Robert's funeral and Cleo's visitation. In article III, testator provided that the residue of his estate be divided in equal shares among his eight individually named siblings.

In 1981, testator's brother Edgar Ross died; in 1986, his sister Olive Roark died; and in 1987, his sister Hazel Rosenbalm died. In July 1987, testator allegedly handwrote and signed a "Supplement to Last Will and Testament" in which he directed that his savings bonds be divided as follows:

| | |
|---|---|
| "Vernon Ross family to get 1 bond | $1000 |
| Cleo Thomas family to get 1 bond | $1000 |
| Olive Roark family to get 2 bonds | $1000 [sic] |
| Hazel Rosenbalm family to get 2 bonds | $2000 |
| Marie Hawk family to get 2 bonds | $2000 |
| Norma Hollenberg family to get 1 bond | $1000 |
| Marjorie Markley family to get 1 bond | $1000 |
| Michel Ross to get 1 bond | $1000." |

After testator died, plaintiffs petitioned the court to construe their uncle's will. The witnesses to the will certified that testator was of sound mind and memory when he signed his will. Marie Hawk and Norma Hollenberg testified that testator was of sound mind and memory when he executed the will. In her deposition, Marie stated

that she and Hazel, along with their families, helped testator with his laundry, housework, feeding the livestock, gardening, yard work, and during his several illnesses. Marie, Norma, and Marjorie Markley stated when deposed that those siblings other than Marie and Hazel and their families had little or no contact with testator during the last 10 years of his life. Defendants also stated in deposition that testator had no ill feelings toward the families of his deceased siblings. The deposition testimony showed that testator had taken an interest in all of his nieces and nephews and had on occasion financially helped certain of them.

The trial judge granted summary judgment for defendants. He stated that, subject to the gifts over to Cleo's and Robert's children and subject to certain other bequests, the residuary estate passed to decedent's surviving siblings because the State's anti-lapse statute applied.

The issue for review is whether the will is ambiguous. Plaintiffs argue that testator's will is ambiguous because of the inconsistencies in the document; and, furthermore, that since it is ambiguous, extrinsic evidence should be admitted to show testator's intent. Specifically, plaintiffs assert that it was incongruous for testator to set forth special instructions in article II in the event of Cleo's and Robert's deaths as to their respective "shares" and give no directions in the event of the death of any of the other siblings. Plaintiffs state that because testator distributed "shares" to Cleo's and Robert's children in article II and the only other place that "shares" are distributed to any of the will beneficiaries is in article III disposing of the residue, this indicates that article II applies generally to the entire will. Plaintiffs also argue that the will is ambiguous because of the prewill deaths of Cleo and Robert and the post-will deaths of Edgar, Olive, and Hazel. Finally, plaintiffs argue that the anti-lapse statute does not apply because testator's will, when read as a whole, does provide for who will take a legatee's share on his or her death.

Defendants argue that the will is unambiguous and that the void gift rule and the anti-lapse statute apply. Defendants state that, applying these rules, the proper result is that the gifts of part of the residue to Cleo and Robert are void and the bequests to Edgar, Olive, and Hazel lapse and fall into the residue, which is to be shared by the surviving siblings only.

We agree with defendants. In *Liebrandt v. Adler* (1961), 30 Ill. App. 2d 257, 174 N.E.2d 228, another will construction case, it was held that where testatrix bequeathed a certain sum of money to the children of her dead husband's nephew and named only six of the

seven children as legatees, this did not present a latent ambiguity which would justify the admission of extrinsic evidence tending to show that testatrix wanted to benefit the whole group of children. The court noted there that the plaintiff was seeking to add a complete bequest and that this was more than a latent ambiguity could accomplish. The court also reiterated the longstanding rule that the intention of the testator, when clearly expressed, must be given effect in preference to any speculation that he did not mean what he said or intended what he said to mean something else. *Liebrandt* (1961), 30 Ill. App. 2d at 262, 174 N.E.2d 228.

More recently, in *Steinke v. Novak* (1982), 109 Ill. App. 3d 1034, 441 N.E.2d 883, we held that where a testator gave preferential treatment to only one of his children by allowing him the right of first refusal on a farm at a given price, this unequal treatment did not raise an ambiguity as to the testator's intentions.

■ On the facts in this record, we cannot say that testator's will is ambiguous. Testator provided for certain of his nieces and nephews to take their parents' shares and did not so provide for others. His treatment of his nieces and nephews is unequal. However, this does not raise an ambiguity and therefore does not allow the admission of extrinsic evidence.

■ Furthermore, testator's provision in article II for a "gift over" to Cleo's and Robert's children cannot be read as a general provision which applies to the entire will. In *Dawson v. Yucus* (1968), 97 Ill. App. 2d 101, 239 N.E.2d 305, it was held that where a testatrix created a survivorship gift of the residue of her estate in one clause of her will, this indicated that she knew how to manifest an intent to create a class or survivorship gift. Thus, where the language of another clause was phrased differently, the court held that the latter clause was intended to create a different kind of gift.

Similarly in the instant case, testator clearly manifested his intent in article II to provide a gift over only to Cleo's children and Robert's children. He made no such provision for any of his other nieces and nephews. Because testator demonstrated that he knew how to provide explicitly for a gift over, his will cannot now be read to implicitly make a gift over to those nieces and nephews to whom one was not made.

Plaintiffs' reliance on *Krog v. Hafka* (1952), 413 Ill. 290, 109 N.E.2d 213, is misplaced. In that case, testatrix left all of her estate except a small legacy to a husband and wife who had been her caretakers. The court there held that extrinsic evidence was admissible to show that testatrix intended the gift to be a class gift even though she had designated the couple by their individual names. That case is distinguishable from

the instant case because, as that court noted, the draftsman of the will there was unskilled, partial intestacy would follow if the gift was distributive, and testatrix's wishes that her heirs at law not share in her estate were well known.

■ Plaintiffs argue that the rule regarding void gifts does not apply in this case. That rule provides that where a beneficiary is dead at the making of the will, a devise to him or her is void from its inception. (*Carter v. Lewis* (1936), 364 Ill. 434, 4 N.E.2d 853.) The rule is clearly applicable here. Therefore, the gifts of the residue to Cleo Thomas and Robert Vernon Ross were never legally valid and thus could not be said to have lapsed. Rather, those gifts were void *ab initio*.

■ Finally, plaintiffs argue that subsection (c) of the anti-lapse statute does not apply here. This section provides as follows:

> "(c) except as above provided in (a) and (b), if a legacy lapses by reason of the death of the legatee before the testator, the estate so bequeathed shall be included in and pass as part of the residue under the will, and if the legacy is or becomes part of the residue, the estate so bequeathed shall pass to and be taken by the legatees or those remaining, if any, of the residue in proportions and upon estates corresponding to their respective interests in the residue." (Ill. Rev. Stat. 1991, ch. 110½, par. 4—11(c).)

Testator did not manifest an intent that this statute not apply; therefore, as the trial court noted, it does apply here. Furthermore, Illinois law presumes that a testator knows the law in force at the time the will is drafted and it presumes that testator made his will in conformity with the law. *In re Estate of Hughlett* (1983), 113 Ill. App. 3d 910, 446 N.E.2d 887.

Applying the terms of the statute, legatees Olive, Hazel, and Edgar predeceased testator. Since they are not descendants of testator and since the gift to testator's siblings was not a class gift, their respective legacies fall into the residuary estate. The surviving residuary legatees take the deceased legatees' shares of the residuary estate in proportion to their own interests in the residue. The residue is to be shared by the residuary legatees who survived testator, *i.e.*, defendants Marie Hawk, Marjorie Markley, and Norma Hollenberg.

For all the foregoing reasons, the judgment of the trial court of Warren County is affirmed.

Affirmed.

STOUDER and McCUSKEY, JJ., concur.